Derbigny, J.
delivered the opinion of the court. The first step, in the investigation of this cause, is to ascertain the nature of the action.—The petition states that the plaintiffs, being owners of a certain house, agreed with Williamson, one of the bankrupts, whose rights are here represented by the defendants, that he should occupy it as their tenant; that Williamson, not having paid them any rent for it, was required to quit the premises, but refused so to do. It concludes by praying that Williamson may be decreed to deliver up the possession of the house and pay damages for the detention. The present defendants in their answer deny these facts and dispute the validity of the plaintiffs’ title.
It is insisted by the plaintiffs that this is a possessory action, and that they have a right to be restored to their possession, independently of any inquiry into their title: but, as they have adduced no other proof of that possession, than a bill of sale of the premises to them, it is impossible to pronounce on the question of possession, *626 without examining whether the bill of sale, be such as they could possess under.
In mere actions recuperandæ possessionis the fact of possession alone is at issue. The plaintiff, proving that he was in possession, and ousted by violence, fraud or artifice, becomes entitled to recover possession at once: the other party, not being even permitted to say that the plaintiff has no title to the thing. But when the plaintiff puts at issue his right of possessing, as where he alleges that he is the owner, and presents his title, as the evidence of his possession, the simple fact of possessing is no longer the only question. The defendant is then allowed to dispute the validity of that title, and is maintained in the actual enjoyment of the premises, if the plaintiff fails to make his title good. Greg. Lopez on Part. 3, 2, 7, and Gomez in leg. Tauri 45, n. 118.
But, it is alleged by the plaintiffs that the defendants have no character to dispute their title inasmuch as they are the representatives of the creditors of Williamson and Patton alone and not of Meeker, Williamson and Patton, in whom it is said the right of property, in the house in contest, was vested jointly, previous to the sale made to the plaintiffs. It is not easy *627 to understand, how the interests of Meeker, Williamson and Patton, can be distinguished here from those of Williamson and Patton: nor how the creditors mentioned on the schedule of Meeker, Williamson and Patton, can be considered as the creditors of Williamson and Patton alone. But, could that distinction be made, still the creditors of Williamson and Patton would be proper parties to plead fraud against the sale of property in which their insolvent debtor had an interest.
The validity of the sale by virtue of which the plaintiffs aver that they were in possession, is therefore the true question to be inquired into.
It is contended by the defendants that this sale is void on two grounds: 1. Because made in part payment of a judgment which is null. 2. Because intended to give an undue preference to a creditor, on the eve of bankruptcy.
I. The first objection, that of the nullity of the judgment, by which the claim of the plaintiffs has been settled, presents a question of vast importance, viz. whether the remedy granted by the Spanish laws, under the name of recourse of nullity, against final judgments, not appealed from, be still a part of our judiciary *628 system. Independently of the right of appeal, there existed in Spanish tribunals, other remedies, among which was the recourse of nullity, which could be resorted to, when the judgment was manifestly against law, or egregiously unjust—that remedy was to be used in the court where judgment had been rendered, if no appeal had been claimed, or if the appeal contained the express reservation that the question of nullity should be decided below. Otherwise it went up before the appellate court, together with the appeal. The time within which this remedy could be applied for depended on the cause of the nullity. If the nullity was owing to a defect in the substantial part of the proceedings, such as a want of citation of the party, the time was thought by some to be unlimited: if to a defect of less magnitude, it was confined to sixty days: again, if it was not prayed for by action, but pleaded by way of exception, it was never too late, unless the exception relied on, could have been brought, under the shape of an action within the legal delay. We are inclined to believe that the law, which created our courts, defined their powers, prescribed the manner of proceeding before them, established their different degrees of jurisdiction and fixed their relative situation,have *629 impliedly abolished such of the former proceedings as do not fall within the course of our present mode of obtaining redress by suit, and that the recourse of nullity is one of those. The subject, however, admitting of doubt, and the judgment in this cause, not being dependent on the decision of this question, we think it best to leave it open for future investigation.
II. The question which now remains to be determined, is one, to which much of the reasoning formerly used in the case of Brown vs. Kenner & al. 3 Martin, 270, may be applied. The striking features of both cases are the same. The difference lies in this—that in the present case, it is not a security given, at the time of a bankruptcy, to a favored creditor, who had no privilege, but a complete transfer of property made in payment of a privileged debt. It is contended on the part of the purchaser that the law, which recognises as valid,the payments made at any time previous to the bankruptcy, is applicable to this case: but a line ought certainly to be drawn between those payments which the debtor has made, in the usual course of his business, and the transfer of his property to creditors whom he is unable to pay, in the manner agreed upon and understood by the parties. *630 In the first case, as was formerly observed, “ nothing attends the transaction, which can " have any tendency to excite suspicions of " fraud and injustice:" in the latter it is the reverse. A favored creditor, aware of the insolvency of his debtor, conspires with him to appropriate to himself the property, which the law already considers as the stock of all the creditors : and, in fact, admit such a contract, at such a time, to be binding, what becomes of those wise and equitable provisions, which are intended to secure to creditors an equal share in the estate of the insolvent? It is indeed forbidden to the debtor to give an undue preference to a creditor by mortgaging his property to him on the eve of a bankruptcy; but that provision will be a mockery, if instead of mortgaging, he be permitted to transfer the property itself.
In this case, however, it is said that no undue preference has been given; the creditor was a privileged one: he had a judicial mortgage on the property in contest for a sum far exceeding its value.
There is no doubt that this circumstance gives a much fairer aspect to the transaction, than it would otherwise have had; but if it would be unlawful for the debtor about to fail, *631 to make any change in the state of his affairs to the advantage of part of his creditors and the injury of the others, why should he be allowed to make one the proprietor of his estate, who had only a lien on it? Why should he be permitted to remove his property out of the reach of his creditors, who may be the losers by the change? It can hardly be supposed, in this case, that the house would have brought more than the amount of the claim of the plaintiffs, but it might have sold for more than they gave for it. Perhaps there were also creditors with a higher privilege than theirs: at any rate, if they had appeared as mortgage creditors, instead of owners, their privilege might have been contested. But, it is not for this court to take any such circumstances into consideration: if the sale be illegal, we are bound to declare it so, and to leave the parties to examine their respective rights, against the estate of the bankrupts, according to the course prescribed in such case.
Smith for the plaintiffs, Livingston for the defendants.
It is, therefore, ordered, adjuged and decreed, that the judgment of the district court be reversed, and that judgment be entered for the defendants and appellants, with costs.